UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LAB VERDICT, INC.,<br>LAWRENCE JOHNSON,<br><br>        Plaintiffs,<br><br>    v.<br><br>LAB EQUIP LTD.,<br>MARK RAFMAN,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)        No. 1:19-cv-02947-JPH-MJD<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

Lawrence Johnson and Lab Verdict allege that Mark Rafman and

Labequip posted defamatory statements about them on Dotmed.com.  Mr.

Rafman and Lab Verdict have filed a motion to dismiss for lack of personal

jurisdiction.  Dkt. [12].  The complaint sufficiently alleges that the conduct of

Labequip and Mr. Rafman created a substantial connection with Indiana.

Therefore, requiring them to defend this lawsuit in Indiana does not offend

traditional notions of fair play and substantial justice.  Finding that the Court

has personal jurisdiction over Mr. Rafman and Lab Verdict, their motion is

**DENIED**.

**I.**
**Facts and Background**

Because Defendants have moved for dismissal under Rule 12(b)(2), the

Court accepts "as true all well-pleaded facts alleged in the complaint..." *Matlin*

*v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) (quoting *Tamburo v.*

*Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)).

1

Lab Verdict is an Indiana corporation headquartered in Indianapolis, Indiana, that provides full-service medical laboratory service and test results. Dkt. 1-3 at 2 (Compl. ¶ 1). Lab Verdict's President, Mr. Johnson, is an Indiana citizen. *Id.* (¶ 2). Labequip, a Canadian corporation, provides new and used laboratory equipment and instruments to its clients. *Id.* (¶ 4). Its President, Mr. Rafman, is a Canadian citizen. *Id.* at 3 (¶ 5).

In 2011, Lab Verdict purchased used lab equipment from Labequip. *Id.* (¶ 6). There was a dispute regarding the sale, and Lab Verdict eventually returned the equipment to Labequip. *Id.* at 3–4 (¶¶ 8, 10–11). During the dispute, Mr. Johnson and Mr. Rafman spoke on the phone about returning the purchased lab equipment. *Id.* at 3 (¶ 7). Less than one month later, Mr. Rafman posted about his interaction with Mr. Johnson and Lab Verdict on Dotmed.com:

> Mark Rafman
> Lawrence Johnson of Lab Verdict, Indianapolis
> November 10, 2011 12:10
>
> We just lost over $9K in goods sold to a Lawrence Johnson of Lab Verdict Corporation, 2311 Duke St, Indianapolis, IN. Credit references seemed good at first, but after an invoice was returned by the post office as "undeliverable", we investigated and found the reference companies to be bogus. He also goes under IMD (International Master Distributors) and Billboards 'N' Motion. He even went to the extent of creating a realistic—looking website, www.labverdict.com. If he is trying to sell you the following equipment he scammed from us, we would appreciate your contacting us at 905-475-5880:
>
> RMC TEC tissue embedding centre
> Fisher tissue flotation bath
> Wescor 7300A slide stainer

*Id.* (¶ 8); *id.* at 9 (Ex. A).

In 2014, Plaintiffs discovered Mr. Rafman's post on Dotmed.com, and

Plaintiffs' attorney sent a letter to Defendants demanding retraction. *Id.* at 3 (¶

9). Then, on November 11, 2014, Mr. Rafman posted another comment on

Dotmed.com:

> Mark Rafman
> re: Lawrence Johnson of Lab Verdict, Indianapolis
> November 11, 2014 10:16
>
> To update this listing:
>
> His original website at the time appeared to be copied almost entirely
> from a urology lab with which he had no association. I say "almost
> entirely", because he forgot to change the name and address of the
> owner of the material in one or two places.
>
> We engaged a reputable collection agency, that tried unsuccessfully
> to collect payment on our bill. They advised against going to court,
> because they reported some unsatisfied judgements against him.
> Thus, we would be out the legal fees with little chance of getting
> payment, even if successful. The unsatisfied judgements can be
> verified independently.
>
> We filed a complaint with the Federal Trade Commission ref#
> 33435006.
>
> Lawrence Johnson called me some months later, whining that he
> was losing business because of our posting on DotMed. He offered
> to pay our bill, in instalments, if we first removed the posting. I
> referred him to our collection agency, and said I would consider
> amending the posting AFTER he paid the bill in full. I never heard
> from him directly, again. Nor did we receive any payment. Recently,
> we received a lawyer's letter accusing us of libel and demanding that
> we retract our posting on DotMed. I am ignoring the letter, because
> all statements are true.

*Id.* at 4 (¶ 10); *id.* at 9 (Ex. A).

In May 2016, Mr. Johnson returned the purchased lab equipment to

Labequip and demanded that Mr. Rafman remove the Dotmed.com posts. *Id.*

at 4–5 (¶ 11).  Defendants received the returned lab equipment, but Mr.

Rafman did not remove the posts.  *Id.* at 5 (¶ 12).  In October 2016, Plaintiffs'

attorney sent a second letter to Mr. Rafman demanding that he remove the

posts.  *Id.* (¶ 13).

On May 30, 2019, Lab Verdict and Mr. Johnson filed suit against

Labequip and Mr. Rafman in the Marion County Superior Court alleging

violations of Indiana law for defamation and invasion of privacy—false light

publicity.  Dkt. 1-3.  Labequip and Mr. Rafman removed the case alleging

subject matter jurisdiction based on diversity of citizenship, dkt. 1, and filed a

motion to dismiss based on lack of personal jurisdiction, dkt. 12.

## II.
## Applicable Law

A defendant may move under Federal Rule of Civil Procedure 12(b)(2) to

dismiss claims for lack of personal jurisdiction.  When faced with a Rule

12(b)(2) motion, the plaintiff bears the burden of making a prima facie showing

of personal jurisdiction.  *Matlin*, 921 F.3d at 705.  The Court accepts as true

the well-pleaded factual allegations, drawing all reasonable inferences in

Plaintiffs' favor.  *Id.*

## III.
## Analysis

Defendants argue the court does not have specific jurisdiction over them

because Plaintiffs cannot show that they expressly aimed their conduct at

Indiana.  Dkt. 13 at 4–6.  They further argue that the exercise of jurisdiction

over them would not comport with traditional notions of fair play and substantial justice. *Id.* at 6–7.

Plaintiffs respond that Defendants purposefully availed themselves of opportunities in Indiana by: (1) selling equipment to Plaintiffs; (2) publishing allegedly defamatory statements about Plaintiffs with the intent to harm their reputations; (3) engaging a collection agency to collect an alleged debt from Plaintiffs; (4) filing a complaint with the Federal Trade Commission about Plaintiffs; (5) speaking to Plaintiffs over the telephone; and (6) accepting the return shipment of lab equipment from Plaintiffs. Dkt. 15 at 4–5. Plaintiffs further contend that Defendants "made pointed statements and accusations about the Plaintiffs to inform others about how they thought the Plaintiffs did business and what the Defendants had done to right the Plaintiffs' perceived wrongs against them." *Id.* at 5.

Where subject matter jurisdiction is based on diversity, the analysis of personal jurisdiction over a non-resident defendant has two steps. First, the court must determine whether its exercise of jurisdiction over the defendant comports with the forum state's long-arm statute. If the first step is satisfied, the court must then determine whether this exercise is authorized by the Fourteenth Amendment's Due Process Clause. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). Indiana's long-arm statute authorizes personal jurisdiction to the full extent permitted by the Due Process Clause, *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 966–67 (Ind. 2006), and Plaintiffs concede

general jurisdiction does not exist, dkt. 15 at 2, so the only question is whether the Court has specific jurisdiction over the Defendants.

Specific jurisdiction is appropriate when: (1) "the defendant has purposefully directed its activities at the forum state or purposefully availed himself of the privilege of conducting business in that state"; (2) "the alleged injury arises out of the defendant's forum-related activities"; and (3) "[t]he exercise of jurisdiction [] comport[s] with traditional notions of fair play and substantial justice." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (citing *Tamburo*, 601 F.3d at 702); *see also Matlin*, 921 F.3d at 705. The primary focus of this inquiry is the defendant's relationship to the forum state. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014).

### 1. Conduct "purposefully directed" at Indiana

Because Plaintiffs allege intentional torts, the first factor focuses on whether the conduct underlying the claims was "purposefully directed at the forum state." *Felland,* 682 F.3d at 674 (citing *Tamburo*, 601 F.3d at 702). A defendant's conduct is "purposefully directed" at the forum state if it is: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id.* at 703 (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)).[1]

---

[1] *Walden* did not overrule *Calder*, and instead distinguished it. So, defamation claims still are governed by *Calder*. *See Walden*, 571 U.S. at 290.

"[M]ere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290.

The "express aiming" test "focuses attention on whether the defendant intentionally aimed its conduct at the forum state, rather than on the possibly incidental and constitutionally irrelevant effects of that conduct on the plaintiff." *Mobile Anesthesiologists Chi., Ltd. Liab. Co. v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 445 n.1 (7th Cir. 2010). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

Here, the three factors demonstrate that Defendants' conduct was "purposefully directed" at Indiana. First, the complaint alleges that Defendants intentionally published defamatory statements on Dotmed.com, and that this conduct interfered with the Plaintiffs' business. Dkt. 1-3 at 5–6 (¶¶ 17–18). These are intentional-tort allegations. *See Tamburo*, 601 F.3d at 704.

Second, although the posts were published on a website that was presumably accessible from virtually anywhere, it may reasonably be inferred that the content of the posts was "expressly aimed" at Indiana. The Seventh Circuit's *Tamburo* decision is instructive. In *Tamburo*, the plaintiff alleged that the defendants defamed him by engaging "in a concerted campaign of blast emails and postings on their websites accusing him of stealing their data and urging dog enthusiasts to boycott his products." *Id.* at 697. The Seventh Circuit found sufficient contacts to exercise personal jurisdiction over the out-

of-state defendants who (1) encouraged readers to boycott the plaintiff's products; and (2) published, in some statements, the plaintiff's Illinois address and urged readers to contact and harass him. *Id.* at 706. The court found that these actions were enough for a prima facie case because the out-of-state defendants "specifically aimed their tortious conduct" at the forum. *Id.*[2]

Here, Defendants' first Dotmed.com post identifies "Lawrence Johnson of Lab Verdict, Indianapolis" and lists Lab Verdict's complete address in Indiana. Dkt. 1-3 at 3 (¶ 8). Defendants' second post has a similar subject line: "re: Lawrence Johnson of Lab Verdict, Indianapolis." The inclusion of Plaintiffs' physical address and location in the posts is one fact that makes it reasonable to infer that Defendants aimed to inflict commercial and reputational harm on Plaintiffs—an Indiana corporation with its principal place of business in Indiana and an Indiana citizen—in Indiana. *See* dkt. 1-3 at 2 (¶¶ 3, 4); dkt. 14. Moreover, the posts accused Lab Verdict of not being a legitimate business, accused Mr. Johnson of having scammed equipment from Defendants, claimed there were multiple unsatisfied legal judgments against Mr. Johnson, and alleged that the conduct of Lab Verdict and Mr. Johnson was the subject of a complaint filed with the FTC. *See* dkt. 1-3 at 3–4 (¶¶ 8, 10). These allegations and statements, while not explicitly asking or telling people to boycott, harass,

---

[2] Since *Tamburo*, the Supreme Court has further clarified that the situs of the plaintiff's injury is relevant but not sufficient to establish minimum contacts. *Walden* held that "mere injury to a forum resident is not a sufficient connection to the forum" and emphasized that the relationship between the foreign defendant and the forum state "must arise out of contacts that the 'defendant *himself*' creates with the forum State." 571 U.S. at 284, 290 (emphasis in original). Although *Tamburo* was pre-*Walden*, the holding is still consistent with *Walden*'s interpretation of *Calder* because there was "something more" than just mere injury to the plaintiff in the forum state.

or contact Plaintiffs, were clearly meant to deter others from doing business with Plaintiffs.

Lab Verdict had its principal place of business and headquarters in Indiana, Mr. Johnson lived in Indiana, and the product that Labequip sold to Lab Verdict was sent to Indiana. With this knowledge, it was foreseeable that Plaintiffs' business activities in Indiana would suffer as a direct result of Defendants' posts. Defendants' allegedly tortious activity was therefore expressly aimed at Defendants' business in Indiana and connected to Indiana in a meaningful way. *Walden*, 571 U.S. at 290; *see also Levin v. Abramson*, No. 18 C 1723, 2018 WL 6812657, at *5 (N.D. Ill. Dec. 27, 2018) (the court found that a Yelp review on an Illinois-based lawyer's account page was expressly aimed at Illinois, the forum state.).

Defendants argue their conduct was not expressly aimed at Indiana, focusing on the fact that the website where the comments were posted is not geographically limited or restricted to Indiana. *Id.* at 5. Defendants rely on *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014) in support of this argument.

But *Advanced Tactical Ordnance Systems, LLC* is different. There, the Seventh Circuit held in that "the sending of two allegedly misleading emails to a list of subscribers that included Indiana residents and the maintenance of an interactive website," did not establish constitutionally sufficient minimum contacts with Indiana. 751 F.3d at 802–03. The court found that it was "entirely fortuitous" that some e-mail subscribers happened to be in Indiana.

*Id.* at 803.  The court further stated that the outcome might have been different if the defendant's contacts with Indiana were based on "deliberate actions by the defendant to target or direct itself toward the forum state."  *Id.*[3]

This case is more like *Calder*.  In *Calder*, the plaintiff, who lived in California, alleged that the defendants, who were headquartered in Florida, libeled her in a news article.  465 U.S. at 784.  The Supreme Court found sufficient contacts to exercise personal jurisdiction over the out-of-state defendants because the forum state—California—was the focal point both of the story and of the harm suffered.  *Id.* at 789.  "The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff."  *Walden*, 571 U.S. at 287 (The newspaper's circulation in California was 600,000; the defendant gathered information for the article by phone calls to California; the plaintiff lived in California, and the story concerned events in California).

Here, Defendants knew that Mr. Johnson lived in Indiana and that Lab Verdict was headquartered in Indiana and conducted its business there.  After selling products to Plaintiffs in Indiana, Defendants utilized a collection agency to research Indiana court records and attempt to collect money from Plaintiffs in Indiana.  Defendants posted derogatory and inflammatory information about

---

[3] The court also noted "it is exceedingly common in today's world for a company to allow consumers to sign up for an email list. We are not prepared to hold that this alone demonstrates that a defendant made a substantial connection to each state (or country) associated with those persons' 'snail mail' addresses."  *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 803.  Here, Mr. Johnson did not simply sign up on an e-mail list.  Rather, Mr. Johnson and Lab Verdict conducted business with Defendants, and then Defendants posted defamatory statements about their Indiana-based business on a website.

these events with the goal of deterring others from doing business with Plaintiffs. While one sale of medical equipment to Plaintiffs in Indiana by itself likely would not suffice to confer personal jurisdiction over Defendants, dkt. 13 at 5, that sale must be viewed along with all other facts as part of "the particular conduct underlying the claims made in the lawsuit." *See Tamburo,* 601 F.3d at 702.

The "reputation-based effects" of the defamatory posts connect Defendants to Indiana, not just to Plaintiffs. It is reasonable to infer that the posts were not merely fortuitous or "untargeted," 465 U.S. at 783, but instead intentionally targeted Indiana.

### 2. Injury "arises out of" Defendants' contacts with Indiana

The second factor focuses on whether Plaintiffs' injuries "arise out of" or "relate to" the conduct that comprises Defendants' contacts with the forum. *Tamburo*, 601 F.3d at 708. Circuit courts disagree whether a defendant's contacts must be the factual cause of plaintiff's injury, the factual and proximate cause, or something in between. *See id.* at 708–09 (citing cases). The Seventh Circuit has suggested that "but for" causation is insufficient to establish the required nexus between a defendant's contacts and the underlying cause of action, *see GCIU-Employer Retirement Fund v. Goldfarb Corporation*, 565 F.3d 1018, 1025 (7th Cir. 2009), but has not resolved the question definitively, *see Felland v. Clifton*, 682 F.3d 665, 676–77 (7th Cir. 2012) (citing *Tamburo*, 601 F.3d at 709).

Here, the allegations are sufficient under the strictest understanding of the "arising out of" requirement. Plaintiffs have alleged intentional torts that presume damages, *see Dugan v. Mittal Steel USA, Inc.*, 929 N.E.2d 184, 186 (Ind. 2010), and it is reasonable to infer that the posts were intended to target Indiana readers. "[T]hese 'contacts' with the forum state are the cause in fact and the legal cause" of Plaintiffs' alleged injuries. *Tamburo*, 601 F.3d at 709. Accordingly, Plaintiffs' claims arise directly out of Defendants' contacts with Indiana. *See id.* The injury to Plaintiffs occurred in Indiana and the facts are sufficient to demonstrate that Defendants acted with the purpose of interfering with the Plaintiffs' ability to do business in Indiana. *See id.*

### 3. Traditional notions of fair play and substantial justice

The third factor focuses on whether the exercise of jurisdiction comports with "fair play and substantial justice" in this case. *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Here, because foreign parties are involved, the Court must consider "the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction." *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102, 115 (1987) (emphasis omitted). The Court also considers: (1) the burden on the defendant; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the interstate judicial system's interest in efficiently resolving the controversy; and (5) the shared interest of the states in furthering substantive social policies. *Tamburo*, 601 F.3d at 709 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

In *Asahi*, the Supreme Court recognized the great burden placed on a foreign defendant in some cases when traveling long distances to defend a suit in a foreign judicial system. *See* 480 U.S. at 114; *accord Mid-America Tablewares Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1362 (7th Cir. 1996). The Supreme Court also noted, however, that "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on an alien defendant." *Asahi*, 480 U.S. at 114.

Here, exercising personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Although Defendants are located in Canada, inconvenience is not a dispositive factor because modern technology and transportation allow it to litigate with relative ease anywhere in the United States. *See Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000) ("Easy air transportation [and] the rapid transmission of documents . . . make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas."). Indeed, Defendants have already retained counsel in the Indianapolis area. Last, there is no indication that the exercise of personal jurisdiction here would undermine any substantive social policies. Accordingly, the third factor is satisfied.[4]

---

[4] Defendants contend that Plaintiffs do not address or establish how jurisdiction is proper over Mr. Rafman. Dkt. 16 at 2 n.1. But the complaint alleges that Labequip's President, Mr. Rafman, published the alleged defamatory posts. Dkt. 1-3 at 3–4 (Compl. ¶¶ 8, 10). Furthermore, all of the facts alleged apply to Mr. Rafman. *See* dkt. 1-3.

**IV.**
**Conclusion**

Plaintiffs have made the requisite prima facie showing that the Court has personal jurisdiction over Defendants. Therefore, Defendants' motion to dismiss for lack of personal jurisdiction, is **DENIED**. Dkt. [12].

**SO ORDERED.**

Date: 1/29/2020

_James Patrick Hanlon_

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Adam Arceneaux
ICE MILLER LLP (Indianapolis)
adam.arceneaux@icemiller.com

Clinton E. Blanck
BLANCK LEGAL, P.C.
cblanck@blancklegal.com

Alexandria Hanauer Pittman
ICE MILLER LLP (Indianapolis)
alex.pittman@icemiller.com